NOT DESIGNATED FOR PUBLICATION

No. 123,546

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

EBENE MBOUMI,
*Appellant*,

v.

REAGAN HORTON,
*Appellee*,

and

REAGAN HORTON,
*Appellee*,

v.

EBENE MBOUMI,
*Appellant*.

MEMORANDUM OPINION

Appeal from Shawnee District Court; THOMAS G. LUEDKE, judge. Opinion filed January 28, 2022. Affirmed.

*Bryan J. Brown*, of Topeka, for appellant.

No appearance by appellee.

Before GARDNER, P.J., SCHROEDER and CLINE, JJ.

PER CURIAM:  After years of contentious litigation over custody and protection from abuse matters, Mother moved for contempt proceedings and sanctions against

1

Father's counsel, Bryan J. Brown. Mother claimed Brown violated 3rd Judicial District Local Rule 3.407 by giving Father a copy of the guardian ad litem's (GAL) investigative report, and violated K.S.A. 2020 Supp. 60-211(b) by filing certain documents making baseless accusations to gain improper advantage in the custody dispute.

The district court denied the contempt motion but did sanction Brown for his conduct. It ordered Brown to complete six continuing legal education (CLE) hours on civility in litigation and ordered him to pay monetary sanctions to deter additional violations. Brown appeals, arguing the district court lacked authority to sanction him and abused its discretion in sanctioning him. Having thoroughly reviewed the record, we affirm.

*Early Proceedings*

This case originally started as a paternity action Father filed in September 2015. The parties agreed to enter conciliation to amicably settle parenting time issues. Yet that goal was not achieved.

In February 2016, the district court entered an order of paternity. According to the parties' agreement, the court awarded the parties joint custody of their daughter, H.H. The court ordered Father to pay monthly child support and ordered Mother to maintain valid health insurance. The district court did not order parenting time but noted that the matter was still being resolved in conciliation and the parties agreed the split would be "liberal and reasonable" and "in the minor child's bests interest."

The district court later adopted the parties' memorandum of understanding addressing parenting time, education, and medical concerns. The memorandum referenced H.H.'s diagnosis of sickle cell disease and addressed some of the parties' concerns about her healthcare.

Despite the memorandum of understanding, the parties continued to litigate parenting time and child support matters. In February 2017, Father moved to modify child support based on his job change and his enrollment in a PhD program in statistics at Kansas State University. The district court later approved the parties' agreement addressing ongoing parenting time issues and allowing Father's temporary reduction of child support.

H.H. was admitted to the hospital more than once during the proceedings and the parents' frustrations with one another seemed to reach a fever pitch around those times. The parties fought often and moved the district court to resolve hospital visitation conflicts. Mother accused Father of causing or worsening H.H.'s medical conditions. In one motion, Mother accused Father of failing to properly give H.H. her medication and failing to reasonably notify Mother of H.H.'s medical emergency, causing H.H. to undergo unnecessary surgery. Mother reported these and other concerns, including allegations of Father's sexual abuse of H.H., to the Kansas Department for Children and Families (DCF).

Mother also petitioned for protection from abuse (PFA) against Father in March 2019, based partly on an incident at Children's Mercy Hospital. Bryan Brown entered his appearance as counsel for Father shortly after Mother filed that PFA.

Mother also pursued allegations of physical abuse in a criminal action against Father. Before Father's criminal trial, Father filed a notice of intent to depose Mother and a motion to appoint a GAL. Mother objected, arguing Father's deposition notice was an inappropriate attempt to question the victim in his criminal case. The district court never ruled on the merits of these discovery issues but eventually found them moot.

Brown accompanied Father to his criminal trial in Kansas City, where Father was acquitted on all counts. While driving together, Father told Brown he believed Mother

3

may seek other means to make sure he never saw H.H. again, saying that Mother's only remaining recourse was to find someone to kill him. Based on that premise, Father cross-petitioned for a PFA from Mother in September 2019.

The parties litigated their PFA petitions for several months before the district court denied Father's cross-petition. Mother's petition was pending for nearly a year before she moved to voluntarily dismiss it without prejudice. By then, a Child in Need of Care (CINC) case had been filed on H.H.'s behalf. Still, Father objected to the dismissal of Mother's PFA petition against him, asserting that it was based on the false assumption that he had assaulted Mother. Nonetheless, the district court dismissed Mother's PFA against Father.

*Appointment of GAL and Transfer to CINC Proceedings*

The district court appointed a GAL in June 2019. A couple of weeks before the GAL's appointment, Father unsuccessfully objected to his appointment, arguing the GAL was biased, yet stating only that the GAL was a Washburn Law School alumnus. Mother was represented by the Washburn Law School Clinic.

In January 2020, the GAL filed an emergency motion to transfer this case to another court to adjudicate H.H. a CINC. We repeat this part of the district court's ruling because it sets out in detail facts merely summarized above:

> "In his motion, the GAL recites facts that are amply supported by the record in this case. In fact, as of the writing of this order, the Court's Register of Action (ROA) report in this matter covers 13 pages. This is impressive, considering the case was filed on September 1, 2015. These 13 pages bespeak continual conflict centering on the minor child and her care. Most notably, the minor child's treatment for sickle cell anemia has precipitated significant clash between the parents. In March of 2019, Children's Mercy Hospital in Kansas City, Missouri dismissed the minor child from care due to the

4

disruption created by the conflict of the parents. [Mother] pursued criminal charges against [Father] arising from this incident. [Father] was subsequently found not guilty of all charges. In [Father's] March 28, 2019 *Response to Motion for Continuance*, he described this as a 'true emergency.'

"Since the case was filed in 2015, [Mother] has made a number of reports to Kansas Department of [sic] Children and Families accusing [Father] of neglecting to provide medicine for the minor child and sexual abuse, among other allegations. Currently, [Mother] has a protection from abuse petition pending in Shawnee County, Case No. 2019-DM-454, based in part on the alleged assault that took place at Children's Mercy Hospital.

"[Father] went so far as to suggest that the parties submit to voluntary electronic monitoring 'so that the court can be assured that neither is attempting to in any way interact with the other.' *Motion for Continuance from April 19, 2019 Hearing [sic]*, filed April 2, 2019. [Mother] has alleged that [Father] 'has shown disregard for HMH's medical condition and has harassed individual[s] trying to provide medical for HMH….' *Plaintiff's Response to Defendant's Motion for Continuance* filed April 9, 2019. She further alleged in this response that two pharmacies have refused to fill prescription for HMH due to [Father's] 'confrontational' behavior. Id. [Mother] has also acknowledged that '[t]he conflict between the parties has affected the minor child's medical care for her very serious chronic illness, sickle cell anemia.' *Plaintiff's Objection to Defendant's Notice of Deposition and Motion for Guardian Ad Litem,* filed May 31, 2019.

"On September 23, 2019, [Father] filed his own *Cross Petition for Protection from Abuse Order*. The filing of this motion coincided with his acquittal on the criminal charge arising from the parties' Children's Mercy conflict. In his petition, [Father] alleged:

"Given that [Mother's] attempt[s] to utilize legal process to block [Father] from access to his daughter have now failed, it is not unreasonable to conclude that hiring an assassin, or personally killing [Father], may be the back-up plan.

5

In *[Father's] Response to [Mother's] Motion to Dismiss His Filing for Protection,* filed October 3, 2019, he cites multiple articles evincing violent, murderous conduct of parents embroiled in custody disputes to prove his point. This petition for protection was ultimately dismissed without a hearing. It is yet another example of the paranoia and hostility on the part of the parents that surrounds this minor child.

"In January of 2020, the parties' conflict over the minor child once again exploded. It was related to yet another hospitalization of the minor child–this time an alleged emergency appendectomy. On January 16, 2020, [Father] filed his *Emergency Motion Seeking Hearing on Hospital Visitation.* In that motion he sought to obtain 'rules of engagement' for parental visitation at Stormont Vail Hospital where the minor child was admitted. He contended that 'mother [is] repeatedly barging into the hospital room while the father [Father] is alone with the sick child.' He described the situation as 'dire' with a hearing 'desperately needed.'

"In responding to [Father's] motion, [Mother] alleged that [Father] failed to reasonably notify her of the minor child's hospitalization. She had been unable, she claims, to inform hospital personnel of relevant medical history of the minor child. She alleges this failure on the part of [Father] could have led to unnecessary surgery as the abdomen pain could have been caused by constipation as a result of [Father's] failure to provide the child with a laxative, MiraLAX. In her *Response to Guardian Ad Litem's Motion for Court Finding Pursuant to K.S.A. 22-3207(c)(1)(A), (B) and (C) and K.S.A. 23-3207(c)(2),* [Mother] states in paragraph 11: 'Because father did not disclose the child's full medical history, the medical staff believed it was an acute appendicitis and removed her appendix.'

"Efforts at reaching a détente in this conflict ranged from conciliation to case management. [Father] himself described some of the efforts in an email to his attorney regarding the appointment of the GAL in this case:

"1) We have been through this before. The whole issue of Stormont Vail was discussed extensively 3 years ago in conciliation for which I spent at least $3000 for the conciliator's fees. . . .

6

"2) Then we were assigned a case manager. I spent over $2500. I ended up having to file a motion to have her removed due to her bias, incompetence and conflict of interest. I prevailed.

"3) Finally the judge appointed a 3rd person free of charge to help us. She quit after two months. Stating that she couldn't deal with so much chaos.

See *[Father's] Response to [Mother's] Objection to . . . Notice of Deposition and Motion for Guardian Ad Litem*, filed June 7, 2019, including attached emails. These comments certainly identify the chronicity of this conflict, its intractable nature and the efforts made to provide assistance to the parties. The conflict of the parties has become a serious threat to the minor child and the parties refuse, or are unable, to correct or ameliorate the problem.

"Faced with this situation, the GAL filed the motion currently pending before the Court to have the case transferred to the CINC court. Not unpredictably, like the others detailed to this case to assist the parties, the GAL is now in [Father's] crosshairs. The conclusion of the GAL, however, is compelled by the sustained and pervasive conduct of both parties."

Mother and Father responded to the GAL's emergency motion. Father's response picked apart the GAL's recitation of the facts, discounting most of the GAL's bases for requesting H.H.'s removal. Father also argued that the GAL's claims were moot and unsubstantiated, that the GAL had acted hypocritically by filing an emergency motion, that the GAL was not acting fairly or effectively, and that the GAL had committed malfeasance.

On February 11, 2020, the district court granted the GAL's emergency motion to transfer this domestic case to another court to adjudicate H.H. a CINC and found the transfer mooted any remaining parenting issues.

7

*Contempt Proceedings*

The same day that Father responded to the GAL's emergency motion, he moved for a protective order for DCF records, requesting an in-camera review of any documents related to him or H.H. Father's motion admitted that he had emailed the GAL and asked whether a full report would be released or if the GAL believed the emergency motion "fully satisf[ied] [his] obligations" to the district court. But the GAL did not respond. A few days later, Father moved the court to investigate docketing irregularities, challenging the propriety of allowing the parties to file motions that falsely impugned his character.

On February 13, 2020, the district court administrative staff sent counsel for both parties a copy of the completed GAL report. Counsel for Mother then replied asking whether the document could be shared with the clients. The court staff replied negatively, explaining that GAL reports are for counsel's eyes only, but that counsel may discuss information in the report with their clients. When Mother's counsel tried to confirm that Brown had not given a copy of the report to Father, she became convinced by Brown's responses that he probably had done so.

Mother then moved the district court to order Brown to show cause why he should not be held in contempt, arguing that Brown had violated Local Rule 3.407(4), which prohibits attorneys from giving clients copies of, or allowing them to read, investigative reports in domestic cases. Third Judicial District, Shawnee County, Kansas Local Rule DCR 3.407 (2014). Mother separately moved for sanctions under K.S.A. 2020 Supp. 60-211 and Local Rule 3.407(8).

Father responded to both motions and moved to admonish Mother for concealing certain filings. And in another motion, Father asked the district court to "share" the GAL report with him and Mother.

8

The district court held a hearing to consider Mother's contempt and sanctions motions. At the close of the hearing, the district court took the matter under advisement and allowed the parties to file written closing arguments. Both parties did so.

As to the contempt motion, the district court found that although Brown had violated Local Rule 3.407(4), the evidence failed to show that he had acted intentionally because he consistently maintained he was ignorant of the rule and his ensuing duties. As a result, the district court decided not to hold Brown in criminal or civil contempt.

*Sanctions*

Two weeks later, the district court ruled on Mother's motion for sanctions. The district court found that although Brown's acts were not contemptuous, his violation of Local Rule 3.407(4) warranted punishment. The district court also imposed sanctions under K.S.A. 2020 Supp. 60-211(c) based on Father's repeated filing of baseless accusations and derogatory statements against various parties. It ordered Brown to pay a monetary sanction of $2,500 as "an appropriate sanction for the conduct in this case and an appropriate deterrent for future conduct," and ordered Brown to "enroll in, pay for, and successfully complete six hours of continuing legal education courses on the subject of civility in litigation."

Father timely appeals the district court's sanction order. Mother did not cross-appeal or file an appellate brief.

*Did the District Court Err in Imposing Sanctions Under Local Rule 3.407(8)?*

Father raises two main issues on appeal. Father first argues that the district court lacked authority to impose sanctions under Local Rule 3.407. He then challenges the district court's sanctions as an abuse of discretion, alleging several factual and legal

9

errors, and claiming that no reasonable person would find his acts punishable or impose as harsh a sanction.

*Jurisdiction*

Father does not raise jurisdiction as an issue on appeal, but we question it on our own. See *State v. Marinelli*, 307 Kan. 768, 769, 415 P.3d 405 (2018) (appellate court has duty to question jurisdiction on its own initiative).

The right to appeal is statutory and is not contained in the United States or Kansas Constitutions. Subject to certain exceptions, Kansas appellate courts have jurisdiction to entertain an appeal only if the appeal is taken in the manner prescribed by statutes. When the record discloses a lack of jurisdiction, the appellate court must dismiss the appeal. *Wiechman v. Huddleston*, 304 Kan. 80, 84-85, 370 P.3d 1194 (2016).

In civil cases, a party may appeal certain decisions as a matter of right. Although some custody appeals may invoke appellate jurisdiction under K.S.A. 2020 Supp. 60-2102(a)(1), the only provision that appears potentially applicable here is K.S.A. 2020 Supp. 60-2102(a)(4). Under K.S.A. 2020 Supp. 60-2102 (4), a party may invoke this court's jurisdiction by appealing "[a] final decision in any action, except in an action where a direct appeal to the supreme court is required by law."

Generally, an appellate court may only review final decisions. "A final decision is one that finally decides and disposes of the entire merits of the controversy and reserves no further questions or directions for the future or further action of the court." *Honeycutt v. City of Wichita*, 251 Kan. 451, Syl. ¶ 1, 836 P.2d 1128 (1992). This court typically treats discovery orders and sanctions based on those orders as interlocutory matters because they are usually made during pretrial proceedings and "can be reviewed and

10

corrected when final judgment is entered by including them in the appeal from the final judgment." *Reed v. Hess*, 239 Kan. 46, 53, 716 P.2d 555 (1986).

But this appeal is not of a pretrial or discovery sanction—the sanction was ordered after the paternity and PFA cases were substantively over. Our court recently found a district court's postjudgment orders enforcing a protective order and sanctioning counsel final for purposes of invoking appellate jurisdiction. *Hernandez v. Pistotnik*, 60 Kan. App. 2d 393, 408-10, 494 P.3d 203 (2021). There, the panel considered the postjudgment proceedings as separate from the underlying action. See 60 Kan. App. 2d at 408-10. We find that case to be well reasoned.

For similar reasons, we find jurisdiction here. The court's order of sanctions is separate from the domestic and PFA cases that gave rise to the sanctions. The district court ruled on Mother's motions for contempt and sanctions after it transferred the domestic case to another court for CINC findings and then found the issues remaining in the paternity action moot. The district court had also dismissed Mother's PFA petition and denied Father's cross-petition for PFA before imposing sanctions. Accordingly, this appeal stems from what was comparable to a postjudgment motion for sanctions. We view the district court's decision imposing sanctions as a final decision from which an appeal is appropriate. And as the party aggrieved by the sanctions order, Brown may appeal it. See *Weeks v. Independent School Dist. No. I-89 of Oklahoma, OK., Bd. of Educ.*, 230 F.3d 1201, 1207 (10th Cir. 2000) ("Counsel have standing to appeal orders that directly aggrieve them."); *Northern Natural Gas Co. v. ONEOK Field Services Co.*, 296 Kan. 906, 916, 296 P.3d 1106 (2013) ("[A] party seeking to appeal must be aggrieved by the judgment or order from which the appeal is taken.").

We limit our review, however, to the order Brown identified in his notice of appeal. "'It is a fundamental proposition of Kansas appellate procedure that an appellate court only obtains jurisdiction over the rulings identified in the notice of appeal.'"

11

*Associated Wholesale Grocers, Inc. v. Americold Corporation*, 293 Kan. 633, 637, 270 P.3d 1074 (2011). Although Brown references other orders in his brief, his notice of appeal includes only the district court's October 19, 2020 order imposing sanctions. We thus review solely that order.

### The District Court's Authority to Impose Sanctions

Brown first argues that the district court lacked authority to impose sanctions under Local Rule 3.407(8) because it found he was not in contempt of court. He then argues that because the district court denied Mother's motion to find him in contempt based on his violation of Local Rule 3.407(4), the law-of-the-case doctrine prevented the court from using that same violation as a basis for sanctions.

### Standard of Review

Brown correctly argues that this court reviews this issue de novo. See *Unruh v. Purina Mills*, 289 Kan. 1185, 1200, 221 P.3d 1130 (2009) (whether a district court can impose sanctions presents a question of law); *In re Marriage of Galvin*, 32 Kan. App. 2d 410, 414-15, 83 P.3d 805 (2004) (we review a district court's interpretation and application of local rules de novo). To the extent that this issue requires statutory interpretation, it presents a question of law over which this court has unlimited review. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019).

### Analysis

Third Judicial District, Shawnee County, Kansas Local Rule 3.407(4) provides:

> "Attorneys may generally discuss the contents of the report with their clients, but absent court authorization shall not give a copy of the report to their clients and shall not

permit their clients to read or make notes from the report. If the investigator clearly designates a portion or portions of the report as 'sensitive' or 'confidential' those portions of the report shall remain confidential and shall not be read or released to the client without prior court approval." Local Rule 3.407(4).

Based on this local rule, Mother moved to find Brown in contempt for having given Father a copy of the GAL's report. Yet the district court denied that motion.

Mother's separate motion for sanctions relied on both Local Rule 3.407(8) and K.S.A. 2020 Supp. 60-211, alleging that Father—through Brown—made inappropriate accusations against the Washburn Law Clinic, the GAL, a former case manager, the court trustee, and the court's administrative assistant.

We find it unnecessary to reach the merits of Brown's claim that the district court's sanction under the local rule violates the law-of-the-case doctrine. Similarly, we do not reach his argument that a court cannot impose sanctions under Local Rule 3.407(8) without finding contempt. See Local Rule 3.407(8) ("Failure to comply with the terms of this rule by either an attorney or a self represented litigant may be punishable by sanctions for contempt of Court as the Court may determine.").

Rather, we assume, without finding, that the district court lacked authority under Local Rule 3.407 to issue sanctions here. But the court additionally relied on Local Rule 3.204(b), which authorizes the court to "make such orders as are just under the circumstances of the case" for violation of a local rule or order, and on K.S.A. 2020 Supp. 60-211 in sanctioning Brown. Brown does not generally challenge the court's power to sanction under these authorities. And, as we explain below, the district court had inherent authority to sanction Brown.

13

*Inherent Authority to Sanction*

A trial court has inherent power to sanction, and the scope of its inherent powers to sanction is broad:

> "There is caselaw supporting the proposition that a trial court possesses inherent powers to sanction when "'reasonably necessary for the administration of justice, provided these powers in no way contravene or are inconsistent with substantive statutory law.'" *Comprehensive Health of Planned Parenthood v. Kline*, 287 Kan. 372, 419-20, 197 P.3d 370 (2008) (quoting *Wilson v. American Fidelity Ins. Co.*, 229 Kan. 416, 421, 625 P.2d 1117 [1981]). The caselaw also supports the proposition that a court's sanction powers may extend to conduct outside the litigation, including "'as a means of enforcing obedience to a law which the court is called on to administer.'" *Kline*, 287 Kan. at 429 (Davis, J., concurring) (quoting *Wilson*, 229 Kan. at 421)." *Pener v. King*, 305 Kan. 1199, 1210, 391 P.3d 27 (2017).

See *Schoenholz v. Hinzman*, 295 Kan. 786, Syl. ¶ 10, 289 P.3d 1155 (2012) (courts have inherent equitable powers to fashion remedies and impose sanctions).

Recently, in *In re Marriage of Leming*, No. 122,603, 2021 WL 2483114, at *6 (Kan. App. 2021) (unpublished opinion), this court affirmed a district court's sanction after finding no contempt. The district court declined to find Leming in contempt but still ordered him to pay monetary sanctions because he had repeatedly violated court orders. In affirming, this court found that "[a]part from its contempt power and without some statutory authority," the district court has inherent power to impose sanctions. 2021 WL 2483114, at *4. The court went on to state that:

> "The sanction power may be used when a party uses the process 'to harass, delay, or achieve other improper ends.' See *Pener v. King*, 305 Kan. 1199, 1210-11, 391 P.3d 27 (2017).

14

"Especially pertinent here, it has been said that the sanction power may be used when a party exhibits a pattern of obstructive behavior to deter the party from continuing that behavior. See *Comprehensive Health of Planned Parenthood of Kansas & Mid-Missouri, Inc. v. Kline*, 287 Kan. 372, 423-25, 197 P.3d 370 (2008). And courts have the inherent power to sanction for bad faith conduct. *Alpha Med. Clinic v. Anderson*, 280 Kan. 903, 926, 128 P.3d 364 (2006)." *Marriage of Leming*, 2021 WL 2483114, at *4-5.

The panel found the district court's sanction reasonable given Leming's consistent violative behavior. 2021 WL 2483114, at *4-6.

Similarly, the district court here found Brown had shown a pattern of using the legal process to harass, intimidate, or achieve other improper ends. So even if the district court lacked authority under Local Rule 3.407 to sanction Brown, it still had inherent authority to do so.

*Authority Under K.S.A. 2020 Supp. 60-211 to Sanction*

Brown does not generally argue that the district court lacked sanctioning authority under K.S.A. 2020 Supp. 60-211. But Brown does contend that the district court lacked authority to sanction him under K.S.A. 2020 Supp. 60-211(c) for his email to the court's Administrative Assistant.

On October 11, 2019, Brown sent this email to the AA:

"Jennifer I'm trying to understand the Rules of Engagement between yourself and the parties in a case. Would you agree with me that it's never ethical for you make contact with or to be contacted by a single party in a multi-party case regarding the need for a hearing or the substance of a claim? if [sic] you do not agree with that general statement could you please explain to me the circumstances in which ex parte contact with you would not violate the rules of ethics?"

15

The court based its authority to sanction Brown for the email solely on K.S.A. 2020 Supp. 60-211, which provides:

"(b) *Representations to the court.* By presenting to the court a pleading, written motion or other paper, whether by signing, filing, submitting or later advocating it, an attorney or unrepresented party certifies that to the best of the person's knowledge, information and belief formed after an inquiry reasonable under the circumstances:

"(1) It is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation;

(2) the claims, defenses and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying or reversing existing law or for establishing new law;

(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

"(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subsection (b) has been violated, the court may impose an appropriate sanction on any attorney, law firm or party that violated the statute or is responsible for a violation committed by its partner, associate or employee. The sanction may include an order to pay to the other party or parties that [the] reasonable expenses, including attorney's fees, incurred because of the filing of the pleading, motion or other paper. A motion for sanctions under this section may be served and filed at any time during pendency of the action, but must be filed not later than 14 days after the entry of judgment."

16

The district court found this statute applied because the email was a "paper". But Brown is correct that our appellate courts have long recognized that sanctions under K.S.A. 2020 Supp. 60-211(c) apply only to papers *filed* with the district court—it states a sanction may include an order to pay to the other party reasonable expenses "incurred because of the filing of the pleading, motion or other paper." See *Giblin v. Giblin*, 253 Kan. 240, 255, 854 P.2d 816 (1993) (finding that 60-211 and 60-2007 do not apply to claims made orally); *In re Marriage of Stockham*, 23 Kan. App. 2d 197, 202-03, 928 P.2d 104 (1996) (finding K.S.A. 60-211 did not apply when attorney did not file the paper with the court). See also *State v. Phelps*, 226 Kan. 371, 380, 598 P.2d 180 (1979) (noting federal civil procedure Rule 11 sanctions apply only to papers filed with the court). In this case, Brown's email was not filed.

Federal courts have addressed a factual scenario like this one, finding that an attorney's email to a courtroom deputy falls outside the scope of Rule 11:

> "Nor does Mohammed's email to the courtroom deputy fall within the scope of Rule 11, as it was not a legal filing placed with the court itself. *See* Fed. R. Civ. P. 11(b) (imposing certification requirements on 'a pleading, written motion, or other paper' presented 'to the court' through 'signing, filing, submitting, or later advocating it'); *Dolin v. GlaxoSmithKline LLC*, 951 F.3d 882, 887 (7th Cir. 2020) (describing the subject of the Rule 11 certification requirements as a 'legal filing'); *Brunt v. SEIU*, 284 F.3d 715, 721 (7th Cir. 2002) ('[Rule 11] is principally designed to prevent baseless filings.')." *Mohammed v. Naperville Community Unit Sch. Dist. 203*, No. 19 C 6525, 2021 WL 1253452, at *3 (N.D. Ill. 2021).

Still, even if the district court lacked authority to sanction an attorney under K.S.A. 2020 Supp. 60-211 for an abusive unfiled paper, the district court had inherent authority to do so. See *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44-45, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991) ("primary aspect" of a court's discretion to exercise inherent sanctioning powers "is the ability to fashion an appropriate sanction for conduct which

abuses the judicial process"). The district court found that Brown's email to its administrative assistant made unfounded ethical rumblings and was intended to harass and intimidate her.

It is imperative that a district court practice restraint and caution when considering sanction, and it must comply with the mandates of due process. *Chambers*, 501 U.S. at 50; *In re Marriage of Wilson*, 43 Kan. App. 2d 258, 270, 223 P.3d 815 (2010). And the district court did so here. It held fair contempt proceedings. It provided Father and Brown notice and reasonable opportunities to respond to Mother's motion for sanctions. And it made long and detailed findings applying the legal factors to the facts of the case. We find the district court acted within its legal authority in sanctioning Brown.

*Did the District Court Abuse its Discretion in Sanctioning Brown?*

*Standard of Review*

Appellate courts review a district court's decision to sanction and its choice of sanction for an abuse of discretion. See *Wood v. Groh*, 269 Kan. 420, 429, 7 P.3d 1163 (2000). An abuse also occurs when the district court reaches a decision with which no reasonable person could agree, but if any reasonable person could agree, the decision must be affirmed. *In re Marriage of Bergmann & Sokol*, 49 Kan. App. 2d 45, 50, 305 P.3d 664 (2013); *Thornburg v. Schweitzer*, 44 Kan. App. 2d 611, 625, 240 P.3d 969 (2010). The district court necessarily abuses its discretion if it makes a legal error. And we accept the district court's factual findings if they are supported by substantial evidence. *Leming*, 2021 WL 2483114, at *4 (citing *Marriage of Wilson*, 43 Kan. App. 2d at 261-62).

18

*District Court's Factual Findings*

The district court focused on four documents. It found:

(1) Father's response to Mother's objection to Father's Motion for Guardian ad Litem, alleging that the GAL was biased, was filed to harass or intimidate the GAL and lacked evidence of bias;

(2) Father's cross-petition for PFA against Mother, alleging Mother's sole recourse was to have him killed, and seeking paternity and child support, was filed for the improper purpose of gaining an advantage in custody issues in the paternity case;

(3) Brown's unfiled email to the court's administrative assistant, tacitly accusing her of an ethical violation, was intended to harass and intimidate her; and

(4) Father's motion for the court to investigate docketing irregularities, alleging the GAL's impropriety, was filed for the improper purpose of harassing and intimidating the GAL.

The district court explained that these were only some of many examples of the "accusatory, harassing, and insulting" papers Father had filed.

The court summarized Father's consistent contentions in his pleadings or motions:

- Washburn Law Clinic was dishonest;
- the GAL was dishonest and biased;
- Mother was being represented by the Washburn Law Clinic at no cost to her while he had to pay for his counsel; and
- everyone who disagreed with Father was biased against him.

*Challenges to Factual Findings*

On appeal, Brown argues the district court's factual findings are not supported by substantial competent evidence. He also suggests that the district court ignored pertinent evidence, including affidavits outlining Father's version of the facts of this case. But the district court admitted the evidence Father claims it failed to consider at the evidentiary hearing on these matters, and we have no reason to believe the district court ignored any evidence.

The district court based its factual findings mostly on quotes from Father's pleadings and those quotes do not require interpretation to establish Father's intent. So we find it unnecessary to detail exactly how the record supports each finding. It is enough to note that Father explicitly stated that several parties, including the GAL, were actively biased against him. He also claimed Mother threatened to kill him. He also impliedly accused the court's administrative assistant of committing ethical violations and threatened to report that violation. But Father never presented any evidence to support these accusations. And the scope of Father's arguments in his motions and cross-petition evidences his bad faith and purpose in making these statements.

The facts here are much like those sanctioned in *Sokol*. There, a pro se party accused an appointed GAL of being a "bad attorney" and a "bad apple" and of committing "conscious theft." This court found that "[t]his type of inflammatory language, presented without a factual basis, cannot be tolerated, has no place in litigation, and is deserving of sanctions under K.S.A. 2011 Supp. 60-211(c)." 49 Kan. App. 2d at 51. The record shows sanctions were similarly justified here.

*Assertions of Legal Error*

Brown next claims legal error, arguing the district court abused its discretion because it lacked authority to

- find he violated K.S.A. 2020 Supp. 60-211 without identifying which, if any, legal theory in his pleadings deviated from Kansas law;
- sanction behaviors to discount his valid claims or legal opinions;
- impose monetary sanctions without assessing them as attorney fees, proportioning an amount to a specific violation, or considering his ability to pay; and
- require Brown to attend CLE classes, especially without considering the cost and availability of those classes.

We address these claims below.

Brown contends that the court erred by finding that he violated K.S.A. 2020 Supp. 60-211 without identifying which legal theory in his pleadings contradicted Kansas law, citing *Moreland v. Perkins, Smart & Boyd*, 44 Kan. App. 2d 628, 643-44, 240 P.3d 601 (2010). *Moreland* does state that "the sanction under K.S.A. 2002 Supp. 60-211 'is generally utilized when a party files a claim based upon a legal theory that is clearly contrary to statute or case law.'" 32 Kan. App. 2d at 643 (citing *Vondracek v. Mid-State Co-Op, Inc.*, 32 Kan. App. 2d 98, 104, 79 P.3d 197 [2003]). But nothing in *Moreland* limits sanctions under K.S.A. 2020 Supp. 60-211 to frivolous legal theories, and the statute itself is broader than that. K.S.A. 2020 Supp. 60-211(b)(1) states that by presenting a paper to the court an attorney certifies that the paper is not being presented for any improper purpose, such as to harass, cause unnecessary delay or needlessly increase the cost of litigation. The district court was not concerned with a lack of legal theory in Father's pleadings or motions, but with the improper purpose for which Brown filed his papers.

21

This court has upheld sanctions based on similar "inflammatory language, presented without a factual basis," such as Brown used against the GAL in his district court pleadings. See *Sokol*, 49 Kan. App. 2d at 51 (finding sanctions warranted under K.S.A. 60-211 against party who accused GAL of "conscious theft," called her a "bad attorney" and a "bad apple" who reflected poorly on other GALs and questioned her ability to be a GAL); see also *Stockham*, 23 Kan. App. 2d at 202 (affirming sanction of ex-wife's baseless and bad faith claims of sexual abuse and request for paternity testing, finding claim pursued to gain advantage in custody proceedings).

Brown generally argues that the district court sanctioned him simply to prevent his litigation and arguments. True, courts are precluded from sanctioning parties for advancing new legal theories simply because the theory lacks pertinent support. See *In re Hesston Corporation*, 254 Kan. 941, 990, 870 P.2d 17 (1994). But any fair reading of the district court's order shows that it did not sanction Brown because his arguments or legal theories were novel or surprising. To the contrary, the district court noted that Father seemed to have some meritorious claims. Yet the district court was very clear as to why it decided to sanction Brown and its reasons were unrelated to the validity or creativity of his legal theories.

*Monetary Sanctions*

We next consider Brown's claim that the district court could impose monetary sanctions only by assessing them as attorney fees, and proportioning an amount to a specific violation, and considering his ability to pay. Here, the district court ordered Brown to pay a monetary sanction of $2,500 to the Clerk of the District Court, not to opposing counsel.

22

In determining whether to issue a sanction under K.S.A. 2020 Supp. 60-211(c) and in determining what sanction is appropriate, a district court must consider the nine factors identified in *Wood*, 269 Kan. at 431; *Sokol*, 49 Kan. App. 2d at 51.

> (1) whether the improper conduct was willful or negligent;
>
> (2) whether it was part of a pattern of activity or an isolated event;
>
> (3) whether it infected the entire pleading or only one particular count or defense;
>
> (4) whether the person has engaged in similar conduct in other litigation;
>
> (5) whether it was intended to injure;
>
> (6) what effect it had on the litigation process in time or expense;
>
> (7) whether the responsible person is trained in the law;
>
> (8) what amount, given the financial resources of the responsible person, is needed to deter that person from repetition in the same case; and
>
> (9) what amount is needed to deter similar activity by other litigants.

In its lengthy and well-explained decision, the district court meticulously considered each of these factors. Although Brown challenges the adequacy of the district court's findings in this regard, the record refutes this claim, and his papers speak for themselves.

Brown also contends that monetary sanctions are limited to paying opposing counsel's attorney fees, rather than paying into court. We disagree. The plain language of K.S.A. 2020 Supp. 60-211(c) says that a sanction may include an order to pay to the other party or parties the "reasonable expenses, including attorney's fees, incurred because of the filing of the pleading, motion or other paper." The Legislature's use of the words "may" and "include" means that monetary sanctions may consist of things other than attorney's fees. And our caselaw has so held. "Courts are not required to award attorney fees when a violation of K.S.A. 1999 Supp. 60-211(b) is found. The district court has the

23

discretion to determine what type of sanctions are appropriate in a given case." *Wood*, 269 Kan. at 431.

And the district court, in analyzing *Wood's* last two factors, properly considered the amount of sanctions necessary to deter Brown from similar conduct and to deter similar activity by other litigants. See *Wood*, 269 Kan. at 431. The court recognized, as *Wood* does, (see 269 Kan. at 430-31), that the purpose of K.S.A. 2020 Supp. 60-211 is to deter the repetition of improper conduct, concluding that "this amount will serve as an appropriate sanction for the conduct in this case and an appropriate deterrent for future conduct."

Federal caselaw is well reasoned and persuasive on this point. "Since the purpose of Rule 11 is deterrence and not compensation, a monetary sanction should ordinarily be paid into court as a penalty rather than to another party as attorney's fees." 61A Am. Jur. 2d, Pleading § 532, citing Advisory Committee Notes to 1993 Amendments to Fed. R. Civ. P. 11. See *Lockheed Martin Energy Sys., Inc. v. Slavin*, 190 F.R.D. 449, 462 (E.D. Tenn. 1999) (finding monetary sanctions payable directly to the clerk of the court appropriate under Rule 11 when an attorney repeatedly filed meritless and redundant materials causing needless waste of judicial resources).

Brown next suggests he cannot afford to pay the monetary sanctions. Yet Brown fails to show that he raised this issue to the district court, and he shows no evidence to support it. Brown's argument on this point is thus speculative and unpreserved. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015) (Generally, new claims cannot be raised for the first time on appeal.). And although Brown also asserts that the district court had to itemize certain amounts for each violation, he provides no authority to support that claim and we know of none. The failure to support a point with pertinent authority is akin to failing to brief the issue. *State v. Salary*, 309 Kan. 479, 481, 437 P.3d 953 (2019).

24

*CLE sanction*

In a similar vein, Brown contends that the district court abused its discretion by ordering him to attend CLE classes.

We agree that to date, Kansas cases have apparently addressed a court's order for an attorney to complete CLE hours only in the context of attorney disciplinary cases. See, e.g., *In re Pyle*, 278 Kan. 230, 91 P.3d 1222 (2004) (requiring an attorney to attend four extra hours of professional CLE classes for three years as punishment for his professional misconduct and his failure to report another attorney's misconduct).

But federal courts have ordered lawyers to participate in CLE programs for violating the federal equivalent of K.S.A. 2020 Supp. 60-211—Federal Rule of Civil Procedure 11(c)(4). See, e.g., *Thomason v. Norman E. Lehrer, P.C.*, 182 F.R.D. 121, 131-32 (D.N.J. 1998); *Bullard v. Chrysler Corp.*, 925 F. Supp. 1180, 1191 (E.D. Tex. 1996); *Edmonds v. Seavey*, 379 Fed. Appx 62, 65 (2d Cir. 2010) (unpublished opinion); *Carlino v. Gloucester City High School*, 44 Fed. Appx. 599, 601-602 (3d Cir. 2002) (unpublished opinion); *Broussard v. Lafayette Consol. Gov't*, Civ. A. No. 6:13-cv-2872, 2015 WL 5025345, at *6-8 (W.D. La. 2015)(unpublished opinion). Those cases are persuasive and make good sense.

We recognize that Rule 11 is broader than K.S.A. 2020 Supp. 60-211, yet we believe this same CLE sanction is authorized under K.S.A. 2020 Supp. 60-211.

> "Although Fed. R. Civ. Proc. 11 is not identical to K.S.A. 1999 Supp. 60-211, the intent behind the rules is the same. The purpose of both rules is to deter 'repetition of improper conduct.' *Waltz v. County of Lycoming,* 974 F.2d 387, 390 (3d Cir. 1992). An award of attorney fees 'should not automatically be the sanction of choice.' 974 F.2d at 390."
> *Wood*, 269 Kan. at 430-31.

25

Our Supreme Court has held that K.S.A. 60-211 allows courts to impose nonmonetary sanctions:

> "We hold that the plain meaning of K.S.A. 1999 Supp. 60-211(c), coupled with the legislative intent of the statute, allows courts to impose nonmonetary sanctions in the form of admonitions, as well as monetary sanctions. Courts are not required to award attorney fees when a violation of K.S.A. 1999 Supp. 60-211(b) is found. The district court has the discretion to determine what type of sanctions are appropriate in a given case. The district court did not abuse its discretion in admonishing the Woods for the filing of the three post-trial motions." *Wood*, 269 Kan. at 431.

*Wood* considered whether sanctions in the form of admonitions were authorized and the court held they were. But nothing in the court's analysis suggests that admonitions are the sole nonmonetary sanctions the statute permits. See *Jarvis v. Wood*, No. 117,790, 2018 WL 5852581, at *17 (Kan. App. 2018) (unpublished opinion) (finding that the sanctions allowed under this statute are not limited to reasonable expenses, including attorney fees, and the district court may more widely exercise its discretion than it could have with mandatory sanctions under the prior version of the statute).

Sanctions should be fashioned to address the improper conduct on which sanctions are based. The district court found many examples of "accusatory, harassing, and insulting" pleadings Father had filed in the district court. Its order that Brown attend six hours of CLE on civility in litigation is nicely tailored to the conduct it found warranted sanctions. We find the district court did not abuse its discretion by imposing the CLE sanction.

*Reasonableness*

Father generally argues that no reasonable person would have read Brown's pleadings or considered the gist of his claims as anything but appropriately spirited legal

26

advocacy. Father also argues that it was unreasonable to consider the number of pleadings he filed or the amount of litigation he caused as a basis for sanctions. But these arguments are improper attempts to relitigate the facts of this case. The district court properly considered Father's contribution to the unnecessary litigation in the district court proceedings when determining the appropriate amount of sanctions to impose for that violation. Sanctioning Father was not "arbitrary, fanciful, or unreasonable," and we find no abuse of discretion. See *Schuck v. Rural Telephone Service Co.*, 286 Kan. 19, 24, 180 P.3d 571 (2008).

*Conclusion*

The district court was authorized by its inherent authority and under K.S.A. 2020 Supp. 60-211 to impose the sanctions it imposed here. We find no abuse of discretion in the decision to sanction, the type of sanctions, or the amount of sanctions the district court imposed.

Affirmed.